# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**KELEI T. JONES,**
**ADC #552818**                                                     **PLAINTIFF**

**V.**                **CASE NO. 4:20-CV-1325-BRW-BD**

**GAYLON LAY,** *et al*.                                          **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.   Procedure for Filing Objections

This Recommendation for the dismissal of Mr. Jones's claims has been sent to Judge Billy Roy Wilson. Any party who disagrees with the findings or conclusions set out in the Recommendation may file objections. To be considered, objections must be received in the office of the Court Clerk within 14 days. Objections should be specific and should include the factual or legal basis for the objection.

If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. If the parties do not file objections, they may waive any right to appeal questions of fact.

### II.   Background

Plaintiff Kelei T. Jones, an inmate at the East Arkansas Regional Unit (EARU) of the Arkansas Division of Correction (ADC), filed this civil rights lawsuit without the help of a lawyer. (Doc. No. 1) Mr. Jones alleges that he contracted COVID-19 because the

Defendants failed to take necessary steps to prevent spread of the infection at the EARU.[1] (Doc. No. 1) Defendants Lay, Branch, Straughn[2], and Payne have moved to dismiss Mr. Jones's claims against them. (Doc. No. 14) Mr. Jones has not responded to the Defendants' motion.

## III. Analysis

### A. Factual Allegations in Mr. Jones's Complaint

According to the allegations in the complaint, on June 9, 2020, medical staff tested Mr. Jones for COVID-19. The ADC allegedly received Mr. Jones's negative test results on June 11 but failed to move him out of the barracks with infected inmates for six days. On June 17, the day he was moved out of the infected barracks, Sergeant Doyle (not a party to this lawsuit) gave him his negative test results. On June 19, Mr. Jones submitted a grievance complaining that ADC staff had left him housed with COVID-positive inmates for six days before transferring him to a different barracks.

On June 21, Mr. Jones states, he began suffering from COVID-19 symptoms. On June 26, he was tested again and on June 30, the result was returned as "indeterminate." (Doc. No. 1 at p.13) On July 1, Mr. Jones tested positive for COVID-19. (Doc. No. 1 at p.15) On July 6, he was moved back to the barracks with other infected inmates.

---

[1] The Court previously dismissed Mr. Jones's claims that the Defendants failed to properly process his grievances. (Doc. No. 12)

[2] The Clerk of the Court is instructed to update the name of Defendant Straugh to Defendant William Straughn. (Doc. No. 11 at p.2)

2

Mr. Jones claims that the Defendants violated his rights by waiting six days to move him out of the barracks with infected inmates. In addition, he claims that Defendants violated his rights by forcing him to sleep on the floor from June 17 to July 3.

B. Standard

In deciding whether Mr. Jones has stated a claim for relief, the Court must assume that the allegations in the complaint are true, then determine whether those allegations, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A complaint cannot simply "[leave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Id.* at 561 (citation omitted). Rather, the facts set forth in the complaint must "nudge [the] claims across the line from conceivable to plausible." *Id.* at 570.

C.   Sovereign Immunity

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). Accordingly, Mr. Jones's claims for money damages from the Defendants in their official capacities are barred by sovereign immunity.

D.   Deliberate-Indifference Claims

To proceed with deliberate-indifference claims, Mr. Jones must allege facts showing that he faced an objectively serious threat to his health and that these Defendants knew of the threat, but demonstrated a lack of care, "equal to criminal recklessness." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011). Even if the Defendants knew that

COVID-19 posed a substantial risk to inmates' safety, they cannot be held liable, "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

    1.    Defendant Payne

Mr. Jones fails to allege how Defendant Payne violated his rights. He names Director Payne as a Defendant in the caption of his complaint, but he does not refer to the Director in the body of the complaint. To the extent that Mr. Jones seeks to hold Director Payne liable based on his supervisory position as Director of the ADC, that claim fails, even if subordinates violated his rights. In a § 1983 action such as this, a supervisor cannot be held liable for the unconstitutional conduct of a subordinate based solely on the fact that he is the supervisor. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); see also *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability"). In other words, Defendant Payne can only be liable for his own actions; that is, for his personal involvement in the deprivation of Mr. Jones's rights. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948. Here, because Mr. Jones does not allege any such facts, his claims against Defendant Payne cannot move forward.

    2.    Defendant Straughn

In his complaint, Mr. Jones's allegations against Defendant Straughn concern his part in processing grievances. Because the Court has already dismissed Mr. Jones's

claims regarding his access to the grievance procedure, no claims remain against Defendant Straughn.

       3.      Qualified Immunity/Individual Capacity Claims[3]

Mr. Jones's claims against Defendants Lay and Branch hinge on allegations that they left him in a barracks with COVID-positive inmates for six days before moving him to a different barracks. He also complains generally that Defendants Lay and Branch violated federal guidelines in addressing the spread of COVID-19 at the EARU.

Defendants Lay and Branch argue they are entitled to qualified immunity on these claims. Public officials, including Defendants Lay and Branch, are immune from liability unless their conduct violated clearly established federal law; and then, only if a reasonable person would have known that the conduct was a violation of federal law. *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (*en banc*) (internal quotation marks omitted). Stated another way, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (citing *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007)).

The first question, therefore, is whether Defendants Lay and Branch violated Mr. Jones's rights by leaving him in a barracks with COVID-positive inmates for six days. Even if this conduct were deemed a violation, the Defendants are not liable absent a

---

[3] Defendants are entitled to dismissal under Rule 12(b)(6) if they show they are entitled to qualified immunity 'on the face of the complaint.'" *Vandevender v. Sass*, 970 F.3d 972 (8th Cir. 2020) (internal citations and quotations omitted).

5

finding that reasonable correction officers would have recognized that a six-day delay in moving Mr. Jones would be so dangerous that it would be a violation of his rights. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). The law, as it existed at the time of the events giving rise to this lawsuit, "must have placed the statutory or constitutional question beyond debate." *Dillard*, 961 F.3d at 1052 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Mr. Jones has attached multiple grievances to his complaint. In those grievances, he complains about the danger of remaining housed with COVID-positive inmates. (Doc. No. 1 at pp.12, 17) In the Warden's response to one of those grievances, he assured Mr. Jones that the ADC was taking necessary precautions to keep the community safe. (Doc. No. 1 at p.17) The Warden noted: "We are sanitizing all areas of the penitentiary throughout the day in an effort to slow the spread of the Coronavirus" and that "[a]ll staff members are required to wear a mask and are being screened daily before entering the facility." (Doc. No. 1 at p.17)

It is unclear from this record: how many inmates in Mr. Jones's barracks tested positive for COVID-19 during the six days in question; whether any other inmates in his barracks were symptomatic; what interaction, in any, Mr. Jones had with COVID-positive inmates. But in any event, Mr. Jones does not allege that either Defendant Lay or Defendant Branch was aware of his negative COVID-19 test but intentionally allowed him to remain housed with COVID-positive inmates for six days. At the time of the events giving rise to this lawsuit, reasonable correction officers would not have known that allowing Mr. Jones to remain in the barracks for six days after his negative test

6

results was a violation of clearly established law. Furthermore, the Warden's response indicates that ADC officials were taking various measures to protect inmates from the spread of COVID-19, including sanitizing the Unit and requiring staff members to wear masks. Accordingly, Defendants Lay and Branch are entitled to qualified immunity on Mr. Jones's deliberate-indifference claim.

4. Unconstitutional Conditions of Confinement

In his complaint, Mr. Jones alleges that he was forced to sleep on a mattress on the floor for 17 days. Even assuming that these allegations are true, this was not a constitutional violation of Mr. Jones's rights. There is no absolute right to be placed in a cell with bedding. *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995) (citing *Johnson v. Boreari*, 946 F.2d 67, 71 (8th Cir. 1991)). Furthermore, Mr. Jones does not allege that he was subject to additional, aggravating conditions, such as being exposed to human waste from a nearby toilet. *Owens v. Scott County Jail*, 328 F.3d 1026 (8th Cir. 2003) (reversing summary judgment where inmate slept on the floor next to a toilet for five weeks) and *A.J. by L.B. v. Kierst*, 56 F.3d 849 (8th Cir. 1995) (finding no constitutional violation where juvenile pretrial detainee was forced to sleep on a floor mattress for approximately fifteen days, a "relatively short period of time").

## IV. Conclusion

The Court recommends that the Defendants' motion to dismiss (Doc. No. 14) be GRANTED, in part. The motion to dismiss should be GRANTED; the request to count this dismissal as a "strike" should be DENIED.

Dated this 25th day of January, 2021.

_____
UNITED STATES MAGISTRATE JUDGE